IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL PARIS, as Personal                     CASE NO.:
Representative of the Estate of
HENRY PARIS, JR., and                          CLASS ACTION
PATRICIA PARIS, deceased,

       Plaintiff,

v.

PROGRESSIVE AMERICAN
INSURANCE COMPANY,
PROGRESSIVE CORPORATION,

       Defendants.

_____

## CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiff, MICHAEL PARIS, as Personal Representative of the Estate of HENRY

PARIS, JR., and PATRICIA PARIS, deceased, on behalf of himself and all others similarly situated,

files this Class Action Complaint against Progressive American Insurance Company and Progressive

Corporation ("Defendants"), and in support thereof states the following:

### NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, Michael Paris, as Personal Representative of the
   Estate of Henry Paris, Jr., and Patricia Paris, who were the named insureds under a
   Progressive automobile policy issued for private passenger auto physical damage including
   comprehensive and collision coverage, which require payment of "Actual Cash Value" or
   ACV.

2.  Defendants are a large private passenger auto insurance carrier operating in Florida, according to the Florida Office of Insurance Regulation 2017 Annual Report. Ex. A pg. 84. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief, Defendants systematically underpaid not just Plaintiff but thousands of other putative Class Members amounts. Defendants owe its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.  This lawsuit is brought by the Plaintiff and all other similarly situated insureds that have suffered damages due to Defendants' practice of refusing to pay full ACV mandatory regulatory taxes, costs and fees (Full Total Loss Payment or "FTLP") to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages.

4.  The failure to pay FTLP to first-party total losses owed to the Progressive insureds pursuant to the policy language is a breach of the policy and violates Florida law.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and he and the Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the 1332 exceptions apply to this claim.

6.  Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

7. At all times material hereto, the the deceased, Henry Paris, Jr., and Patricia Paris, are and were domiciled in Pinellas County, Florida, and were citizens of the State of Florida.

8. At all times material hereto, the Defendants are and were a foreign corporation located in the State of Ohio, incorporated in Ohio, and authorized to transact insurance in the State of Florida. Defendants also own other, subsidiary companies operating under the "Progressive" name, and Defendants are responsible for the standardized automobile insurance policies and claims handling and payments issued to Plaintiff and all of the putative class members. Defendants are incorporated in Ohio with its principal office and headquarters located at 6300 Wilson Mills Road, Mayfield, Ohio 44143. Ex. B.

## AMOUNT-IN-CONTROVERSY

9. Defendants are the 3rd largest physical damage auto insurer in Florida based on premiums written. Ex. C (Market Share Report) pg. 362.

10. Defendant Progressive American wrote almost $1.4 billion dollars in premiums in the calendar year 2016. Ex. A at 84. Defendants' loss ratio (claims made divided by premiums earned) is approximately 72%[1] and the ratio in claim payment for physical damage (as opposed to bodily injury and physical damage liability) is approximately 46.5%.[2] Under those numbers, Defendant Progressive American, as a single entity, paid approximately $468 million in physical damage claims.

---

[1] Ex. C at 362.

[2] According to the Insurance Information Institute, physical damage payments constitute 46.5% of payments for claims made. The Insurance Information Institute has been cited and relied on by numerous federal courts for insurance statistics. Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 117 n3 (4th Cir. 2015), cert. denied, 137 S. Ct. 53 (2016); Thompson v. State Farm Fire and Cas. Co., 5:14- CV-32 (MTT), 2016 WL 2930958, at *1 n. 2 (M.D. Ga. May 19, 2016); Caliber One Indem. Co. v. Wade Cook Fin. Corp., 491 F.3d 1079, 1086 (9th Cir. 2007).

11. According to the Insurance Information Institute, the average loss paid on a physical damage claim is approximately $2800. Based on this average loss claim, Defendants paid approximately 167,400 physical damage claims in 2016 alone.

12. Total losses are approximately 18% of all auto physical damage claims. (See CCC Information Services, Inc., "What's Driving Total Loss Frequency?" (www.cccis.com/whats-driving-totalloss-frequency/). Defendants paid approximately 30,162 total-loss claims in 2016 alone.

13. During the relevant time period, the State of Florida imposed a mandatory minimum title transfer fee of $75.25 and a mandatory tag transfer fee of $4.60, for a total of $79.80, not including any other mandatory taxes, costs or fees. Plaintiff's claim, as further set out herein, alleges that Defendants' contract obliges it to include FTLP, including title and tag transfer fees, to its insureds (including Plaintiff) in the event of a total loss, and that Defendants nevertheless uniformly declines to include such fees, thereby breaching its contract with every putative class member. 30,162 multiplied by $79.80 is $2,406,927.60, thus constituting the amount-in-controversy in 2016 alone for tag and title transfer alone as to Progressive American alone. Multiplied by the five year relevant time period, the amount-in-controversy easily exceeds $10 million dollars as to a single Defendant entity for tag and title transfer alone, not including attorney's fees or injunctive or any other damages or forms of relief.

14. Thus, the fact that the amount-in-controversy exceeds $5,000,000 is plainly stated on the fact of the documents and is "readily deducible" from these pleadings. Lowery v. Ala. Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007).

## FACTUAL ALLEGATIONS

15. Defendants' standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every Progressive auto policies issued by Defendants in Florida.

16. Defendants' standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Progressive auto policies issued by subsidiary insurance companies under control of Defendant Progressive Corporation and issuing auto coverage in Florida.

17. Defendants' standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Progressive auto policies issued by Defendants and is present in policies of subsidiary insurance companies under control of Defendants.

18. Defendant Progressive Corporation sets the policy language and the claims process handling, including payment of ACV in the event of total losses.

19. Subsidiaries of Progressive Corporation are required to use the practices, policies, and procedures set by and enforced by Progressive Corporation.

20. Progressive Corporation governs and has full control over all policy, practices and procedures issued and/or enacted by its subsidiaries. Such subsidiaries operation only with Progressive Corporation's complete and full knowledge, authority and control.

21. Progressive Corporation's subsidiaries enact the policies, practices and procedures set and enforced by Progressive Corporation, and operate as its agents and alter-ego's in all operations and actions.

22. ACV includes an obligation to pay FTLP for total loss vehicle comprehensive and collision coverage.

23. At all times material hereto, Plaintiffs Henry Paris, Jr. and Patricia Paris owned a 2004 Jaguar XJ8, VIN # SAJWA71C64SG26787 ("Insured Vehicle").

24. At all times material hereto, Plaintiff insured the 2004 Jaguar XJ8 under an insurance policy issued by Defendant. Ex. D (composite Policy-related documents) at 2 (Dec sheet).

25. On or about December 1, 2017, Henry Paris, Jr. and Patricia Paris were involved in an fatal accident while operating the Insured Vehicle. As a result of said accident, Plaintiffs' Estate filed a claim for property damage with Defendants, claim number 17-1354847-01.

26. Following the filing of said claim, Defendants determined that the Insured Vehicle was a total loss with a base value of $6,324.94.

27. The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage. CCC included in its Valuation Report the fact that sales tax was calculated at $421.86. No amount for title transfer fee, tag transfer fee, or any other mandatory fee was included.

28. Defendants' paid $6,746.70 as the ACV payment.

29. Defendants' payment of $6,746.70 - and not the FTLP (full total loss payment) including mandatory transfer fees - constituted a breach of its insurance policy.

30. Title transfer fees and tag transfer fees are both mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

31. Florida law requires that all vehicles be properly titled in order to be legally driven on Florida roadways. Fla. Stat. Ann. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state."). The fee to transfer title to a vehicle is, at minimum, $75.25.

32. Florida law requires that all vehicles have proper license plate (or tag) in order to be legally driven on Florida roadways. Fla. Stat. Ann. § 320.0609. The fee to transfer license plate or tag is $4.60.

33. Plaintiff was owed, at minimum, title transfer fees of $75.25 and tag transfer fees of $4.60.

34. In breach of its contract with Plaintiff, Defendants did not include transfer fees in making the ACV payment for Plaintiff's total loss and did not make the FTLP.

35. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

**THE PROGRESSIVE INSURANCE POLICY**

36. The insurance policy (Ex. D) under the section entitled "Part IV, Damage to a Vehicle" (p. 23)[3], states that "Collision" coverage means they will pay for the **sudden, direct and accidental loss to a covered auto**, including an attached trailer; or non-owned auto; and its custom parts or equipment, resulting from collision."

37. The "insured auto" or "covered auto" is defined, *inter alia*, as the auto listed in the declarations page. Id. at 1.

38. In the same section, under a provision entitled "Limits of Liability" (Id. p. 28), states that the "limit of liability for loss to a covered auto… is the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible."

39. "Property damage" is defined, in relevant part, as "physical damage to, destruction of, or loss of use of tangible property." Id. at 2.

---

[3] Page 34 of the exhibit. Citations to the policy page numbers are pinpointed to the actual policy page number, rather than to the page number of the composite exhibit.

40. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and a comprehensive total-loss claim.

41. ACV is not specifically defined in the policy.

42. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding state and local regulatory fees or taxes from ACV; (2) any provision deferring payment of the ACV state or local regulatory fees or taxes for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state and regulatory fees and taxes; or (5) any provision linking the amount of ACV state and regulatory fees and taxes to a particular replacement vehicle and the corresponding state or local regulatory fees and taxes on said replacement vehicle.

43. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased, insured auto's are considered "owned" for purposes of the policy. Id. at 2.

## PAYMENT OF MANDATORY TAXES AND FEES

44. Florida law is clear that courts cannot limit the scope of a term, if it is not defined in the policy, to a narrow definition that benefits the insurer; in fact, if policy language is susceptible to more than one reasonable interpretation, it is construed in the light that would grant coverage, i.e. to the benefit of the insured and against the insurer. *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779 (Fla. 2004).

45. The 11th Circuit interpreted Florida law concerning ACV policies as requiring payment of costs reasonably likely to be incurred upon replacement.  Mills v. Foremost Insurance Co., 511 F.3d 1300, 1306 (11th Cir. 2008).

46. Defendants' policies promise to provide the FTLP, including those costs reasonably likely to be incurred upon replacement. Nevertheless, Defendants decline to actually include such charges in making ACV payment to total-loss insureds, thereby breaching its contracts with insureds.

47. Defendant Progressive Corporation is the parent company of numerous subsidiary insurers. Defendants, as the parent, controls each subsidiary, provides the standardized policy forms, training, underwriting, premiums, policy language and in all ways is responsible for the failure to pay state and regulatory fees promised under the comprehensive and collision coverages.

## CLASS ALLEGATIONS

48. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

49. Plaintiff's claims are typical to those of all class member because members of the class are similarly affected by Defendants' failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policy.

50. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is the Plaintiff subject to any unique defenses.

51. Plaintiff's claim raises questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only

individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendants' standardized policy language, Plaintiff and the class members are owed ACV state and local regulatory fees, charges and taxes upon the total loss of an insured vehicle; and (b) whether the Defendants have breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

52. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendants to make a FTLP upon the total loss of insured vehicles.

53. Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class.

54. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

55. Class action is necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(a), because the prosecution of separate actions by or against individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

56. Class treatment is also necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(b), because the prosecution of separate actions by or against individual Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be

dispositive of the interests of other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

57. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

58. Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the Middle District very recently treated as a class action a case that is substantially identical in fact and in law to the present action. See *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). *Bastian* is in the process of being successfully settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, Roth v. Geico General Insurance Co., Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) is a substantially similar case recently certified as a class action with judgment entered in favor of the class.

59. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

**CLASS**

> All insureds, under any Florida policy issued by Progressive American Insurance Company, Progressive Corporation, and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

60. The issues related to Plaintiff's claim do not vary from the issues relating to the claims of the other members of the class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

61. Certification of the above class is also supported by the following considerations:

    a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

    b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

    c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

62. Although the precise number of class members for the Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendants are one of the largest motor vehicle insurer in the State of Florida and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that

joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

63. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendants and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include (but are not limited to): (1) Whether policy language ACV includes mandatory costs to replace the Insured Auto, and (2) whether Defendants are required to pay mandatory costs, taxes and fees to insureds who suffer total-losses to vehicles insured under Defendants' Policies.

64. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendants' uniform misconduct. Further, Plaintiff's and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

65. Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to

individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

66. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

67. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

68. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them,

and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

69. Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages the Class in the future.

## CLAIM FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS

70. The allegations contained herein are incorporated by reference.

71. This count is brought by Plaintiff, Michael Paris, as personal representative of the Estate of Harry Paris, Jr., and Patricia Paris, and on the Class Members.

72. Plaintiff was party to an insurance contract with Defendant as described herein. All Class Members were parties to an insurance contract with Defendants containing materially identical terms.

73. The interpretation of Plaintiff and all Class Members' insurance Policies is governed by Florida law.

74. Plaintiff and all Class Members made a claim determined by Defendants to be a first-party total loss under the insurance policy, and determined by Defendants to be a covered claim.

75. Defendants, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under the Policies for each Plaintiff to be paid on his or her total loss.

76. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the actual cash value of the vehicle, including all mandatory costs, taxes and fees (FTLP).

77. Defendants refused to to make FLTP (including mandatory costs, fees and taxes) to Plaintiff and every Class Member.

78. Defendants' failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

79. As a result of said breaches, Plaintiff and the class members are entitled under Defendants' insurance policies to sums representing the benefits owed for ACV mandatory taxes and fees, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

80. In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other other statutory or contractual provisions allowing for attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff Michael Paris, as personal representative of the Estate of Harry Paris, Jr., and Patricia Paris, individually and on behalf of the Class, demand a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Classes described above;

- For an award of compensatory damages for the Monetary Relief Class in amounts owed under the Policies;

16

- For injunctive relief for the Injunctive Relief Class to prevent continuation of this illegal practice, for other injunctive relief as is proven appropriate in this matter;

-  For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated this 6th day of November, 2018.

Respectfully submitted,

By: _/s/ Edmund A. Normand_
Edmund A. Normand
FBN: 865590
Normand, PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
407.603.6031
firm@ednormand.com
ed@ednormand.com

By:____/s/ Jake Phillips_____
Jacob L. Phillips
FBN: 0120130
Normand, PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
407.603.6031
jacob@ednormand.com

By: _/s/ Christopher J. Lynch_
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200

Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com