# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL PARIS, as Personal
Representative of the Estate of
HENRY PARIS, JR., deceased,
CHRISTIE HEGEL, and
ROLANDO HERNANDEZ

     *Plaintiffs*,

v.

PROGRESSIVE AMERICAN
INSURANCE COMPANY, and
PROGRESSIVE SELECT
INSURANCE COMPANY,

     *Defendants*.

_____

CASE NO.: 19-21761-CIV-Dimitrouleas

<u>CLASS ACTION</u>

# PLAINTIFFS' MOTION FOR
# <u>CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW</u>

## I.     INTRODUCTION

Plaintiffs Michael Paris, Christie Hegel, and Rolando Hernandez ("Plaintiffs") file this Motion for Class Certification and seek an order certifying the proposed Classes as defined herein, pursuant to Federal Rule of Civil Procedure 23. All preconditions for class certification set forth in Rule 23(a) are satisfied, and class treatment is proper through Rule 23(b). *See* Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy), *and* (b)(3) (predominance and superiority).

It is difficult to conceive of a case more suitable for class treatment – indeed, this Court certified for class treatment materially-similar cases in *Roth* and *Joffe* notwithstanding hurdles to certification in those cases that do not exist here. This case is a straightforward breach of contract – Defendants Progressive American Insurance Co. and Progressive Select Insurance Co. ("Defendants" or "Progressive") promised to pay their insureds the actual cash value ("ACV") of their vehicles in the event of a total loss. The ACV of a vehicle includes costs necessary to replace the vehicle, including Sales Tax and title and registration transfer fees ("Transfer Fees"), which are mandatory costs imposed by the State of Florida at a flat rate. All Class Members insured their vehicles under uniform and materially-identical policy forms (the "Policy"), and questions related to both liability and damages are not only common, they are identical. Because the Policy, laws, damages, and obligations in this litigation are identical for all Class Members, resolution of Plaintiffs' claims will resolve virtually the entire claim of all members of the proposed Classes in a single stroke. Plaintiffs respectfully submit this case is quintessentially suitable for class treatment, and request this Court enter an Order certifying the Classes as defined herein, appointing Plaintiffs as Class Representatives and the undersigned as Class Counsel, and directing the parties to submit a Notice plan under Fed. R. Civ. P. 23(c).

## II.     FACTUAL BACKGROUND AND ALLEGATIONS

### A.  Every Class Member Is Owed ACV, Including Sales Tax and Transfer Fees, and Every Class Member Was Underpaid

Defendants provide private-passenger property damage auto coverage to insureds in Florida. As outlined in the Third Amended Complaint ("TAC"), Defendants systematically underpaid Plaintiffs and thousands of other putative Class Members amounts Defendants owed for Sales Tax and/or Transfer Fees. TAC (Doc. 95) at ¶ 2.

Plaintiffs' materially identical policies (Exh. A),[1] under the section entitled "DAMAGE TO A VEHICLE," states Defendants will pay for sudden, direct, and accidental loss to a covered vehicle. Policy at 15. In the same section, under a provision entitled "Limits of Liability," Defendants state the relevant limit of liability for loss is the ACV of the damaged property. *Id.* at 19.

According to the Policy, ACV is "determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at 20.  The policy language does not (1) exclude Sales Tax or Transfer Fees from ACV, nor (2) contain any provision deferring or conditioning payment of Sales Tax or Transfer Fees for any purpose whatsoever. *See* Exh. B (Michael Riva 30(b)(6) Deposition Transcript) ("Riva Dep.") at 72-73. Moreover, the Policy makes no distinction between owned, financed, or leased vehicles – to the contrary, the Policy defines them the same and promises precisely the same coverage. *See, generally*, Policy; *see also* Exh. C ("Erickson Decl.") at 4-6. Plaintiffs possessed coverage under uniform policy provisions for comprehensive and collision coverage, and, along with all other similarly-situated insureds with identical coverage provisions and policies, were systematically underpaid for their total loss claims. TAC at ¶¶15, 61.

Moreover, discovery to date demonstrates that Defendants ███████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Thus, every member of the Classes is owed $79.85 in Transfer Fees. As to owned and financed vehicles, ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████ If the vehicle is leased, however, ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █ Moreover, if an insured retains the salvaged vehicle, ████████████████████ ██████████████ Nothing in the Policy permits Defendants (██████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████ Rather, Plaintiffs allege all insureds are owed precisely the same thing – Sales Tax of 6% (plus any applicable surtax) of the adjusted value of the vehicle and Transfer Fees of



---

[1] As set forth herein, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Plaintiffs attach form 9610A to exemplify the materially-identical policy language.

$79.85. TAC at ¶47. Thus, all members of the Classes were underpaid Transfer Fees, and some are owed the difference in Sales Tax between the amount owed (6% plus local surtax) and the amount actually paid (which could be $0.00).

Plaintiffs' total loss claim experiences typify those of the Class Members. ██████████ ██████████████████ the claim payment amount included full Sales Tax but did not include any amount for Transfer Fees. *See* Exh. D (Paris Settlement Letter). Mr. Hernandez, however, not only did not receive Transfer Fees, but was also was significantly underpaid Sales Tax. Exh. E (Hernandez Settlement Letter) (indicating $142.56 in sales tax on adjusted vehicle value of $41,400.73). Ms. Hegel also did not receive Transfer Fees and was significantly underpaid Sales Tax. Exh. F (Hegel Settlement Letter) (indicating $156.48 in sales tax on adjusted vehicle value of $33,400.96).[2]

██████████████████████████████████████████████████████████
███████████████████████████████

**B. Defendants Utilize Policy Forms Providing the Same Coverage, Including Coverage for Sales Tax and Transfer Fees Without Precondition**

Importantly, Defendants confirmed ███████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████ Moreover, discovery confirms Defendants can specifically ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ Progressive's data confirms there are over ████████ Class Members – insureds who suffered a total loss to their insured vehicles and were not paid Transfer Fees or, in some cases, the full amount of Sales Tax owed as part of the ACV payment. *Id.* at 12-13 (number of total-loss claims during relevant time period).

---

[2] Progressive labels the $33,400.96 as the ACV amount, but Plaintiffs contend it is not because it does not include Sales Tax or Transfer Fees. Progressive's process is to ███████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Progressive considers this ████████████████ to be the vehicle's ACV, as seen by the fact that the amount in Exhibit G is the same as the ACV amount in Exhibit F. Plaintiffs, however, refer to this ████████████████ amount as the adjusted vehicle value, and alleges that Sales Tax and Transfer Fees must be added to this amount, which then constitutes the vehicle's ACV.

Transfer Fees necessary to replace the vehicle are imposed at set rates unchanged during the relevant time period. *See* Exh. I ("Matera Decl.") at ¶¶11-17. Florida law requires every vehicle to be legally titled. *See* § 319.21(3) Fla. Stat. (2019). A person does not acquire marketable title, or otherwise own the vehicle at all, unless he or she transfers title to their name, nor can they legally operate the vehicle. *See* § 319.22 Fla. Stat. (2019). To transfer title – and thus comply with such requirements – insureds must pay a fee, which is derived from several component parts and amounts to $75.25. Matera Decl. at ¶¶11-12.[3] Additionally, an insured cannot legally operate the vehicle unless he or she complies with the statutory requirement to legally register the vehicle, *see* § 320.02(1) Fla. Stat. (2019), for which an insured must pay (at minimum) a transfer fee of $4.60. *Id.* at ¶¶13, 16-17. Further, Florida law imposes Sales Tax of 6% on every vehicle transaction, Fla. Stat. § 212.08, and many counties impose a surtax of 0.5% to 2% on the first $5,000.00 of the transaction.

Thus, Sales Tax and Transfer Fees are necessary replacement costs – and therefore part of the ACV of an insured vehicle – and apply equally to all members of the proposed Classes.

### C. ACV Includes Sales Tax and Transfer Fees Without Precondition

Under well-established Florida law, ACV equates to market value measured as replacement costs less depreciation. *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (finding ACV unambiguously means market value and is calculated as replacement costs less depreciation); *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438, 443 (Fla. 2013) (same). This is consistent with Defendants' Policy, which explains that ACV is determined by market value, along with vehicle age and condition. Policy at 20. As explained in *Perez*, there are three ways of measuring market value, and the ACV method of measurement is replacement costs less depreciation. 689 So. 2d at 291.

Moreover, Florida law proscribes conditioning payment of ACV on amounts paid, if any, in the past, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2004) (insurers, under an ACV policy, cannot condition payment on amounts incurred by insured on replacement property), or on amounts paid, if any, in the future. *See Balboa Ins. Co. v. Harry Lee Motors, Inc.*, 439 So. 2d 311 (Fla. 3d DCA 1983) (insurers, under an ACV policy, cannot condition payment on amounts insured paid for vehicle in the past). As explained in the context of automobiles, including by this Court, this means insurers cannot condition ACV amount on whether a vehicle is owned/financed or leased. *See Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226554 (S.D. Fla. Jun. 13, 2018); *Sos v. State Farm Mut. Auto. Ins. Co.*,

---

[3] There are other fees which are optional or non-mandatory – for example, consumers can pay additional fees for specialty plates or duplicate copies or to record a lien. *Id.* Plaintiffs do not believe insurers are liable for such optional fees, as they are not necessary to replace a vehicle.

396 F. Supp. 3d 1074 (M.D. Fla. 2019). And as noted above, the Policy makes no distinction between owned, financed, and leased vehicles, but instead defines them the same. Erickson Decl. at 4-6.

### III.    PROPOSED CLASS

Plaintiffs seek to certify the following Classes, with Plaintiffs Paris and Hernandez representing the Progressive American Class, and Plaintiff Hegel representing the Progressive Select Class:

> **Progressive American Class**
> All insureds, under any Florida policy issued by Progressive American covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim determined to be a total loss, and whose total-loss payment did not include payment for Transfer Fees and/or included a payment (if any) for Sales Tax of less than 6% of the adjusted vehicle value, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

> **Progressive Select Class**
> All insureds, under any Florida policy issued by Progressive Select covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim determined to be a total loss, and whose total-loss payment did not include payment for Transfer Fees and/or where the Sales Tax amount (if any) was less than 6% of the adjusted vehicle value (plus any applicable surtax), within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

### IV.    ARGUMENT

A district court has broad discretion in determining class certification. *See, e.g., Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class, the named plaintiff must have standing, all Rule 23(a) requirements must be satisfied, and at least one Rule 23(b) subsection must be satisfied. *See, e.g., Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Courts should analyze the merits of the pleadings to the extent necessary to determine whether the Rule 23 requirements are satisfied, *see, e.g., Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1218 (S.D. Fla. 2018), but not to "engage in free-ranging merits inquiries at the certification stage." *Cox v. Cmty. Loans of Am. Inc.*, 625 Fed. Appx. 453, 455 (11th Cir. 2015) (citation omitted).

#### A.  The Class Certification Threshold Requirements are Satisfied

To certify a case for class treatment, courts must find two threshold requirements are met: first, that the proposed representative possesses standing to assert each claim, and second, that the class is adequately defined and ascertainable.

      i.   <u>Plaintiffs Possess Standing to Assert their Claims</u>

The first threshold question is whether the plaintiff possesses Article III standing to press each claim, which in this case is breach of contract. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1986); *J W v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1272 (11th Cir. 2018) (that a suit is brought as a class action "adds nothing to the question of standing").

To satisfy Article III, a plaintiff must allege a redressable injury-in-fact that is traceable to the defendant's conduct. *Miccosukee Tribe of Indians v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1228 (11th Cir. 2000) (setting forth the three-part test for constitutional standing). For a breach of contract claim, "Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega*, 564 F.3d at 1272. Each plaintiff alleges the contract was breached by Progressive's lack of payment of Transfer Fees, and Hegel and Hernandez for underpayment of Sales Tax. TAC at ¶¶25, 33, 41. By alleging Defendants breached its contract by failing to pay the full ACV of her insured vehicle, thereby damaging them in the amount of at least $79.85, Plaintiffs established Article III standing. *See Venerus v. Avis Budget Car Rental, LLC*, 723 Fed. Appx. 807, 813-14 (11th Cir. 2018); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury.").

ii.    The Class Is Adequately Defined and Ascertainable

Before embarking on the Rule 23 analysis, a plaintiff must show the class is adequately defined and clearly ascertainable. The Eleventh Circuit has not confirmed the standard for ascertainability in this Circuit,[4] but Plaintiff easily satisfies the unpublished standard. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014) (quotations omitted). These objective criteria should "allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015).

Ascertainability is a preliminary inquiry (to consider whether there is a means of later identifying class members) before embarking on an analysis of the Rule 23 requirements for class

---

[4] In *Ocwen Loan Services, LLC v. Belcher*, 2018 U.S. App. LEXIS 18088 at *3 (11th Cir. June 29, 2018), the Eleventh Circuit noted there is a circuit split as to whether "a plaintiff must demonstrate an 'administratively feasible' method for determining class membership," and that the Court "has yet to address this split in a published opinion." While for purposes of this Motion, Plaintiffs assume the heightened standard applies, Plaintiffs believe it is an atextual requirement better analyzed within the framework of the actual textual requirements rather than as a freestanding precondition. Until and unless Congress adds an administrative-feasibility requirements, Plaintiffs respectfully submit courts should "apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017).

certification. *See Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Consideration of ascertainability "better prepares a district court to 'direct to class members the best notice that is practicable under the circumstances[,]'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015) (*quoting* Fed. R. Civ. P. 23(c)(2)(B)), including direct notice to class members who can be identified via "reasonable efforts" – implying, of course, that some class members may not be subject to identification until a claims' process. Because ascertainability is designed to aid the determination of whether proper notice is directed to class members, ascertainability is a "narrow inquiry". *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *28-30 (S.D. Fla. Jun. 26, 2018).

Here, there is no question the class is ascertainable. Progressive testified



Even if a file-by-file review were necessary to identify class members, such a fact would not preclude class treatment, because identification would be based on objective criteria, and the file-by-file review would be to determine class membership, not the merits of the claim. *See Ocwen*, 2018 U.S. App. LEXIS 18088, at *11 ("the district court was within its discretion to reason, as it did, that 'file-by-file review' does not necessarily amount to 'file-by-file trial.'"); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 680 (N.D. Ga. 2016) ("As numerous district and circuit courts have recognized, 'the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification.'") (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)).

Not only will Progressive's records confirm Class Members' identification, they are based on objective definition criteria – i.e., when the accident occurred, whether it was determined to be a total-loss, whether Sales Tax and/or Transfer Fees were paid – and not on subjective criteria, such as state of mind. *Compare, e.g., Bussey*, 562 F. App'x at 787 ("An identifiable class exists if its members can be ascertained by reference to objective criteria."), *and Cox v. Porsche Fin. Servs.*, 330 F.R.D. 322, 331 (S.D.

---

5 █████████████████████████████████████████████████████████████
████████████████████████████████████████████ because they need only show the class is ascertainable, not that it is already ascertained. *See, e.g., Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450 at *11 (M.D. Fla. Mar. 26, 2012) ("Class members need not actually be ascertained prior to certification" (citations omitted)).

Fla. 2018) (payment data is objective criteria), *and Dear v. Q Club Hotel, LLC*, 2016 U.S. Dist. LEXIS 180873, at *5 (S.D. Fla. Dec. 8, 2016) (dates on which relevant incidents occurred is objective criteria), *and Young*, 693 F.3d at 539 (identifying "classic categories" of objective criteria, including location of insured property and amount of sales tax charged), *with Conigliaro v. Norwegian Cruise Line*, No. 05-21584-CIV-ALTONAGA/Tur, 2006 U.S. Dist. LEXIS 95576, at *20 (S.D. Fla. Aug. 31, 2006) ("A class is not sufficiently definite where membership in the class is contingent on the state of mind of the prospective class members." (internal quotations and alterations omitted)).

Class membership is not only based on objective criteria, it is determined by objective evidence in Defendants' possession; thus, class membership can be reliably proven and is not dependent on the "say-so" of putative class members. *See Karhu*, 621 Fed. Appx. at 948 (justifying imposition of administrative feasibility requirement because forcing defendants to accept assertions without evidence of membership would implicate due-process). Here, class membership is proven by objective evidence, and therefore evidence that can be tested – namely, ███████████████████████ ████████████████████████████████████████████ – and there is consequently no question that whether a person is bound by any judgment will be easily determinable. *See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 321 F.R.D. 677, 685 (M.D. Fla. 2017) *rev'd on other grounds* 938 F.3d 1170 (11th Cir. 2019) (finding class to be ascertainable where Plaintiffs set forth a reasonable explanation of why they believe the information necessary for class member identification may be extracted from Defendants' records without undue difficulty). The ascertainability requirement is clearly satisfied.[6]

Moreover, the Classes are adequately defined. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (class definition should not be overly broad, amorphous, or vague). Because every Class Member, at minimum, was not paid Transfer Fees, the Classes are not overbroad. *See Terrill v.*

---

[6] Plaintiffs do not believe ███████████████████████████████████████████████ ████████████████████████ ut, to the extent this Court finds it necessary, Mr. Martin's declaration demonstrates it is easy to do so. Exh. J (Martin Decl.) at ¶¶23-29. Mr. Martin can do so without access to any claims' files, and thus a file-by-file review is unnecessary. However, even if a file-by-file review were necessary to identify some class members, such a fact would not preclude class treatment. *See, e.g., Joffe v. Geico Indem. Ins. Co.*, 2019 U.S. Dist. LEXIS 176117, at *10 n.1 (S.D. Fla. Jul. 30, 2019) ("Some file-by-file manual review does not preclude class treatment."). Importantly, Progressive confirmed ███████████████████████████████████████████ ███████████████

*Electrolux Home Prods.*, 295 F.R.D. 671, 684 (S.D. Ga. 2013) (class definition tailored to include those who suffered harm as alleged in complaint is not overbroad) *rev'd on other grounds* 2016 U.S. App. LEXIS 5112 (11th Cir. Mar. 21, 2016).  And Progressive cannot claim the Classes are failsafe because class membership is not defined by reference to the merits of the claim – failure to pay Sales Tax and/or Transfer Fees may or may not constitute a breach, and class membership is not defined such that membership depends on whether this Court determines a breach occurred. *See Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015) ("Plaintiffs' defective proposed class definitions are potentially curable…instead of identifying class members as [anyone] "charged by Nationstar for property inspection fees [] more times in a one year period" than legally allowable, "Plaintiffs could simply define class membership by specific reference to [the] alleged improper property inspection fee assessment — i.e., more than twelve times in a one-year period."). Finally, because it is clear who is and is not a member of the Classes, the class definition is not vague or amorphous. *See, e.g., Teahl v. Lazy Flamingo, Inc.*, 2016 U.S. Dist. LEXIS 99440, at *15-16 (M.D. Fla. Jun. 21, 2016) (class was not vague because it made clear who qualified as a class member and was not difficult to apply).

As this Court previously held in similar total-loss litigation, the threshold requirement that the class be adequately defined and clearly ascertainable is satisfied here. *Roth*, 2018 U.S. Dist. LEXIS 226658, at *9 n.1; *Joffe*, 2019 U.S. Dist. LEXIS 176117, at *10 n.1. ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ .

**B.  The Proposed Classes Satisfies the Rule 23(a) Requirements**

After considering the threshold issues, "the analysis shifts to the requirements of Fed. R. Civ. P. 23." *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 684 (S.D. Fla. 2004). First, a plaintiff must satisfy the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy. *Id.*

  i. <u>The Classes Are Sufficiently Numerous</u>

The purpose of the numerosity inquiry is to determine "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). In the Eleventh Circuit, "'[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quotation omitted). Here, data produced by Defendants shows that there are over ██████ Class Members of the proposed Classes – ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████ . The numerosity requirement is easily satisfied.

ii.   <u>There Are Questions of Law and Fact Common to the Classes</u>

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Satisfying the commonality requirement is a "low hurdle" under Rule 23(a)(2). *Id.* at 1356. "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *Martinez v. Wells Fargo Bank, N.A. (In re Checking Account Overdraft Litig.)*, 307 F.R.D. 630, 640 (S.D. Fla. 2015). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268 (internal quotations and citations omitted).

Commonality is satisfied in this case because whether Defendants breached the form Policies by failing to pay Sales Tax and/or Transfer Fees on Florida first-party total loss claims is a common question of law, for which interpretation of the uniform Policy language across the entire putative Classes will provide a common answer. *See, e.g., See Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (commonality established where the court interpreted materially similar contracts); *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 671 (M.D. Fla. 2010) (Commonality requirement "will often be satisfied in cases of **form contracts such as insurance policies**, so long as the policy documents are uniform or largely the same throughout the case.") (emphasis added). ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████

This litigation revolves around whether the Policy requires payment of Sales Tax and Transfer Fees. Resolution of that common issue is the crux of this case and is "one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355. Even were this the only common question, it would satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (quotation omitted). ██████████████████████████████

████████████████████████████████████████████████████████████

████████   *Id.*; *see also Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (The commonality requirement is satisfied "where the question of law linking the class members is

substantially related to the resolution of the litigation even though the individuals are not identically situated."); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) ("Factual differences concerning treatment of damages will not defeat a finding of commonality."). ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ Thus, the critical question in this litigation is how ACV should be interpreted, the resolution of which will resolve a substantial element of every Class Member claim.

Importantly, this same common issue was easily found to satisfy the Rule 23(a)(2) requirement in virtually identical total-loss class actions, including by this Court. *See Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 58201, at *11 (M.D. Fla. Apr. 4, 2019) ("whether GEICO breached its contractual obligations [] by not paying [Transfer Fees] is common to all putative class members…") (citation omitted); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 139680, at *10 (M.D. Fla. May 2, 2019) (same, including sales tax); *Roth*, 2018 U.S. Dist. LEXIS 226658, at *9 (same).

    iii.   Plaintiff's Claim Is Typical of the Classes' Claim

To demonstrate typicality, a plaintiff should "demonstrate that a 'sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017) (quotation omitted). Thus, "'[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Williams*, 568 F.3d at 1356-57).

Defendants' practices described herein are uniform and Plaintiffs' claims are based on the same legal theory—their identical policy language insurance contracts with Progressive were materially breached because ACV includes costs reasonably likely to be incurred without precondition. *See Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) ("[T]ypicality measures whether a significant nexus exists between claims of the named representative and those of the class at large."); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 (S.D. Fla. 2010) (typicality met where class representative's claim was premised on the same injury as class members and subject to class-wide proof). Moreover, ████████████████████████████████████████████████████████████████████, and their claim is based on the same theory and is subject to the same defenses, meritorious or not. *Williams*, 568 F.3d at 1356-57. Moreover, the presence of a unique defense or factual circumstance does not preclude a finding of typicality unless it is likely to be central to the litigation. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A factual variation will not render a class representative's claim

atypical unless the factual position of the representative markedly differs from that of other members of the class."). Here, there is no evidence of unique claims or defenses precluding a typicality finding.

Finally, and as before, it is significant that courts, including this Court, have found in virtually identical ACV class actions that the plaintiffs' claims were typical of class members' claims. *See Jones*, 2019 U.S. Dist. LEXIS 58201, at *12 ("The named Plaintiffs' claims are typical of the putative class [because they] involve the alleged breach of identical contractual provisions pursuant to GEICO's standard practice" of not including Transfer Fees in ACV payments); *Sos*, 2019 U.S. Dist. LEXIS 139680, at *12 (same as to sales tax and Transfer Fees); *Roth*, 2018 U.S. Dist. LEXIS 226658, at *10 (typicality satisfied because plaintiff was insured under identical policy terms, suffered the same injury, and based her claim on the same theories of liability as the class); *Joffe*, 2019 U.S. Dist. LEXIS 176117, at *11-12 (same). Typicality is similarly satisfied here.

    iv.    <u>Plaintiffs and Counsel Are Adequate Class Representatives</u>

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Fulfilling this requirement mandates that: (i) the class representative possesses no interests antagonistic to the class, and (ii) class counsel is competent. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiffs are committed to protecting the interests of the Classes by prosecuting the action, as seen by their prosecution of the claim through the counsel they retained and engagement in the discovery process. *See Prindle v. Carrington Mortg. Servs.*, LLC, 2016 U.S. Dist. LEXIS 112881, at *19-20 (M.D. Fla. Aug. 24, 2016). There is no suggestion any conflict of interests exists, and there is no threat that action in this litigation could benefit some class members while harming others. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding class representation addresses situations where "some party members claim to have been harmed by the same conduct that benefitted other members of the class.").

Plaintiffs' counsel is experienced in litigating class actions and complex litigation, including successfully litigating class actions with substantially similar issues. Exh. K (Phillips Decl.); *see also Joffe*, 2019 U.S. Dist. LEXIS 176117, at *13 (counsel's experience in class action litigation supported finding of adequacy).[7] Further, class counsel possess the resources to litigate the claim. *Id.* Thus, Plaintiffs and class counsel will protect the interests of the class and adequately prosecute the claim.

**C. Class Treatment Is Appropriate Pursuant to Rule 23(b)**

---

[7] Notably, three of the attorneys this Court found adequate in the *Roth* and *Joffe* litigation – Ed Normand, Chris Lynch, and Jacob Phillips – are among the undersigned here.

Plaintiffs seek certification pursuant to Rule 23(b)(3), which permits class treatment where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and…[class treatment] is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

      i.    <u>Common Issues Predominate Over Any Individual Issues</u>

"Determining whether common questions of law or fact predominate over questions affecting only individual members…requires a showing that 'the issues in the class action that are subject to generalized proof…predominate over those issues that are subject only to individualized proof.'" *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)). An absence of individual issues is not necessary. *See, e.g. Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions…be common, but only that some questions are common and that they predominate over individual questions").

Notably, courts routinely find predominance in cases involving interpretation of uniform material insurance provisions. *See, e.g., Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."); *Powers v. Govt. Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998) (common issues predominated for a state class involving an insurer's breach of its policies by recovering under subrogation claims).[8] Here, the predominate common issue is whether Defendants' ACV policies include coverage for Sales Tax and Transfer Fees without precondition, ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ . *See, e.g., Carriuolo v. GM Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (that certain questions may be common to some but not all class members does not defeat predominance; at most, it might merit creation of subclasses). Thus, it *contributes* to a finding of predominance.

---

[8] In fact, as one court pointed out, claims arising from interpretations of a form contract appear to present the classic case for class treatment because "the account agreements at issue [ ] are uniform form contracts offered on a take-it-or-leave it basis that were not the product of any individual negotiation." *Martinez v. Wells Fargo Bank, N.A. (In re Checking Account Overdraft Litig.)*, 307 F.R.D. 630, 648 (S.D. Fla. 2015) (distinguishing *Sacred Heart*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.")).

Instructive on this point is the Eleventh Circuit's guidance on how to categorize common and individual issues for purposes of determining predominance: "To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements" and then "classify these issues as common questions or individual questions by predicting how" the elements will be proved. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1234 (11th Cir. 2016). Such analysis can be clarified by considering what the effect would be if the addition or subtraction of Class Members would significantly impact the evidence necessary to resolve the claim. *See Vega*, 564 F.3d at 1270 ("If…the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.").

The elements of a breach of contract claim in Florida is (1) a valid contract; (2) a material breach; and (3) damages. *See Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. Dist. Ct. App. 1994). The "valid contract" element is satisfied by common proof – namely, Progressive's testimony that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ In other words, the evidence necessary to prove the "breach" element for every Class Member – the Policy language and the payment data – will be the same irrespective of ████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████

Moreover, damages will be determined based on a formulaic calculation – Transfer Fees of $79.85 and sales tax of 6% (plus applicable surtax) of the adjusted vehicle value, less any amounts already paid. Martin Decl. at ¶¶15-22.[9] Thus, while the *amount* of damages may vary (because vehicle values vary), the *measure* of damages is a common issue, and it is the methodology that matters for purposes of predominance, not the actual calculated amount. *See Klay*, 382 F.3d at 1259-60 (footnotes omitted) ("[W]here damages can be computed according to some formula, statistical analysis, or other

---

[9] For example, assuming the amount of Sales Tax and Transfer Fees owed to Mr. Hernandez is $2,613.89 (adjusted vehicle value of $41,400.73 times 0.06 equals $2,484.04, plus $79.85 in Transfer Fees, plus $50.00 in local surtax (1% of first $5,000.00 in Miami-Dade County)), the amount in *damages* for Sales Tax and Transfer Fees he is owed is $2,471.33 ($2,613.89 minus the $142.56 that was included in Mr. Hernandez's original total loss claim payment). *See* Exh. E.

easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); *see also Newberg on Class Actions* § 12:2 ("a common method for showing individual damages—a simple formula could be applied to each class member's … records—[is] sufficient for the predominance and superiority requirements to be met.") (footnote omitted). As this Court explained in the context of total-loss litigation, if the methodology for calculating damages applies class-wide, that the calculation itself will result in different amounts is of no import, because such individual amounts are unrelated to liability. *Joffe*, 2019 U.S. Dist. LEXIS 176117, at *14-15. In any event, even if damages raise individualized issues, such a finding does not defeat class certification. *See Brown*, 817 F. 3d at 1239 ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues…the fact that damages are not identical across all class members should not preclude class certification.").

Frankly, not only do common questions predominate over individual questions, it is difficult to conceive of any material individual questions at all. For this reason, in cases concerning virtually identical claims, courts (including this Court) find that "[p]redominance is easily met." *Jones*, 2019 U.S. Dist. LEXIS 58201, at *17; *see also Roth*, 2018 U.S. Dist. LEXIS 226658, at *13-14 (noting that "[i]nterpretation of uniform material insurance provisions that will determine liability is particularly indicative of predominance" and holding the "common legal and factual issues identified in this case" addressing underpayment of ACV significantly outweighed any individual questions); *Joffe*, 2019 U.S. Dist. LEXIS 176117, at *13-15 (same); *Sos*, 2019 U.S. Dist. LEXIS 139680, at *20-21 (because, *inter alia*, sales tax and title transfer fees could be applied formulaically across the class, "[p]redominance is easily met."). This entire litigation revolves around whether Progressive owed Sales Tax and/or Transfer Fees to insureds who suffered a total-loss; the answer to that question will resolve essentially the entire litigation as to both liability and damages. Moreover, entitlement to ACV does not require incurring costs. *See, e.g., Mills*, 511 F.3d at 1305 (ACV policy does not require insureds to incur costs before being entitled to payment of ACV); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 962-63 (6th Cir. 2005) ("Indeed, even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss[.]"); *Bastian v. United Servs. Auto. Ass'n*, 137 F. Supp. 3d 1272, 1278 (M.D. Fla. 2015) (ACV entitled insureds to replacement costs "regardless of whether that amount is actually incurred."); *Roth*, 2018 U.S. Dist. LEXIS 226554,

at *9 (plaintiff was entitled to full ACV even if she never replaced the vehicle). Evidence of whether a Class Member replaced their vehicle and the amount incurred (if any) is irrelevant to this litigation.

Thus, resolution of the claim is subject to common proof. *See Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (common issues predominate where subject to generalized proof). After adjudicating class-wide issues, all that will remain will be ministerial calculation of damages utilizing Defendants' own records – certainly, there will be no need for individualized proof concerning "most or all" of the elements of the claim. *Klay*, 382 F.3d at 1255. Aggregate damages for all Class Members, along with interest calculations, will be proven on summary judgment or at trial, and individual damages can be calculated and confirmed in a supervised post-judgment process. *Id.* at 1273 (district courts may appoint magistrate to "preside over individual damages proceedings"); Martin Decl. at ¶¶20-22.[10] As in other total-loss litigation, predominance is easily met here.

    ii.    <u>Class Treatment Is a Superior Method of Adjudication</u>

Rule 23(b)(3) also requires that class treatment be superior to alternative methods of litigation. The focus "is not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269 (citing *In re Managed Care Litig.*, 209 F.R.D. 678, 692 (S.D. Fla. 2002) (noting superiority analysis "requires the Court to determine whether there is a better method of handling the controversy other than through the class action mechanism")). Generally, where common issues predominate, class treatment is superior because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.*

"To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008); *see also City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 657 (S.D. Fla.

---

[10] Notably, this was precisely the process implemented in the *Roth* litigation. See Exh. L (*Roth* Omnibus Order) at 4-5 (ordering process overseen by magistrate of calculating individual damages). As Mr. Martin points out, this process resulted in a jointly proposed Final Judgement in which the Parties agreed to calculation of individualized damages for every Class Member, and Class Members were specifically identified therein. Martin Decl. at ¶22.

2010). Each factor demonstrates the superiority of class treatment over other methods of adjudication for the claims alleged in this litigation.

1.  *Class Member Interests Are Supported by Class Treatment*

The typical claim of each Class Member ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████ which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company. *See Leszczynski*, 176 F.R.D. at 676 ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."); *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 538 (11th Cir. 2017) (reversing denial of class certification because, *inter alia*, district court failed to consider that "low per-class-member recovery militates in favor of class adjudication."). The fact that individual recovery is low is virtually dispositive of superiority. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("While…Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually").

This Court has made clear that where the potential recovery is relatively small, the inevitable conclusion is that class members cannot have an interest in individual prosecution of a claim for which the recovery would not justify such prosecution. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 678 (S.D. Fla. 2015) ("Nearly all of the Class members in these actions have claims that are so small that…there is no reason to believe that the Class members have any particular interest in controlling their own litigation."). This factor clearly counsels in favor of class treatment. *See Roth*, 2018 U.S. Dist. LEXIS 226658, at *15 (finding superiority where "the average claim of each class member is approximately $1,480.00, which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company"); *Joffe*, 2019 U.S. Dist. LEXIS 176117, at *16 (same); *Sos*, 2019 U.S. Dist. LEXIS 139680, at *22 (finding superiority where "the class members' interest in controlling the prosecution of these relatively small claims is low").

2.  *No Other Litigation Precludes Class Treatment*

There is one other class action, *South v. Progressive Select*, S.D. Fla. Case No. 1:19-cv-21760, in which the plaintiff alleges (against Progressive Select only) failure to pay Transfer Fees as part of ACV payment. However, the *South* case is also pending before this Court, the main claims concern the

underlying vehicle valuation, and, in any event, given the case is a class action, it certainly does not indicate class treatment is not superior. This factor favors class certification. *Klay*, 382 F.3d at 1269 (that other class members had not filed similar individual litigation meant second factor favored finding of superiority).

3.     *It Is Desirable to Concentrate Litigation in This Forum*

The Southern District of Florida is well equipped to handle insurance class actions. In fact, this Court has specifically decided virtually identical total-loss claims against other insurers. *Roth*, 2018 U.S. Dist. LEXIS 226658; *Joffe*, 2019 U.S. Dist. LEXIS 176117. All potential class members currently reside or did reside in Florida during the class period, and all relevant transactions occurred in Florida. *See Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013) (because all subject "transactions occurred in Florida, litigating this case in a Florida federal district court makes sense.").

Additionally, class treatment will conserve judicial resources and offers "substantial economies of time, effort and expense" for the parties. *Klay*, 382 F.3d at 1280; *see also, e.g., Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("Even if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources."). Because the case is subject to generalized proof and common issues of liability and damages, it makes little sense to require individual class members to litigate the same issue over and over again, even if they were inclined to do so for the low amount at issue. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Moreover, this Court already issued a ruling on a Rule 12(b)(6) motion, which impacts the analysis and favors concentrating the litigation in this forum. *Klay*, 382 F.3d at 1271 ("it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters."). This factor also militates in favor of class treatment.

4.     *Class Treatment Is Manageable*

As an initial matter, manageability concerns will rarely suffice to preclude class treatment. *Klay*, 382 F.3d at 1272 (manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class."). Moreover, the crux of liability in this case is determined by uniform policy provisions and damages will be determined by simple formulas for both Sales Tax and Transfer Fees. On this record, the case is not merely manageable as a class, it is ideal for class treatment. *See, e.g., Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010) ("Given the number of issues subject to class-

18

wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases.").

Frankly, there are little manageability concerns at all – certainly, they do not preclude class treatment. The case concerns pure policy interpretation, and liability will almost certainly be determined at summary judgment. Damages are a ministerial application of rates and fees imposed by the State of Florida (and not subject to individualized proof). *See Steen v. Capital One (In re Checking Account Overdraft Litig.)*, 2012 U.S. Dist. LEXIS 200108, at *82 (S.D. Fla. Jul. 19, 2012) (because damages were a ministerial application, class treatment was manageable and superior). Moreover, as discussed above, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

This case is ideal for class treatment precisely because it will be easily managed, as seen in the efficient management of similar class actions cited herein.

## V.   **NOTICE**

In (b)(3) class actions, Rule 23 requires the "best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In this case, the putative Class Members were all Progressive insureds and ███████████████████████████████████████████████████

████████████████████████████████████████████████. Courts routinely find notice by mail to be appropriate. *See, e.g., Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. 2006). Rule 23(c)(2)(B) permits notice by mail and electronic means, meaning email. *See, e.g., Martin v. Safe Haven Sec. Servs.*, No. 19-00063-CV-W-ODS, 2019 U.S. Dist. LEXIS 174373, at *7-8 (W.D. Mo. Oct. 8, 2019) ("[E]mail provides an efficient and cost-effective means of disseminating notice documents. . . . Also, the Federal Rules of Civil Procedure state, 'notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.'" (quoting Fed. R. Civ. P. 23(c)(2)(B)); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016) ("The email notice provided to more than 90% of the Class members in this lawsuit was the best practicable notice and was reasonably calculated to apprise them of their rights. Courts consistently approve notice programs where notice is provided primarily through email because email is an inexpensive and appropriate means of delivering notice to class members.").

Concerning more detailed questions related to the form of the notice to be sent, development of a website, procedures for opt-outs, etc., Plaintiffs submit the Parties can collaborate to develop a

joint notice plan to submit to the Court for approval once this Court certifies the Classes. If the Parties are unable to agree, Plaintiffs can submit a Proposed Notice to which Defendants can respond to be resolved by the Court.

## VI.     CONCLUSION

As demonstrated herein, this case is ripe for class treatment – indeed, given that it concerns a form contract and uniform practices and procedures throughout the entire Class Period, it is the quintessential class case. Far from the type of low-cost consumer goods that make class member identification difficult, the Classes are ascertainable through objective evidence within Defendants' own possession. Joinder of the hundreds of thousands of individual claims is impracticable and individual litigation of such claims, even if the relatively low damages renders such litigation impracticable, would overwhelm the judicial system with repetitious claims. Plaintiffs' claims – like those of every member of the Classes – depends on the same Policy language and the same practices and procedures. This Court's interpretation of ACV – specifically, whether it includes costs necessary to replace a total loss vehicle without precondition – will resolve virtually the entirety of Plaintiffs' and every Class Members' claim.

Thus, Plaintiffs respectfully submit this Court should GRANT the foregoing Motion, pursuant to Fed. R. Civ. P. 23, and enter an Order:

- Certifying the Classes as defined herein;
- Appointing Plaintiff Paris and Plaintiff Hernandez as representatives of the Progressive American class, and appointing Plaintiff Hegel as representative of the Progressive Select Class;
- Appointing the undersigned as Class Counsel; and
- Directing the Parties to submit a proposed Notice Plan complying with Rule 23(c), or, if the Parties are unable to agree, for Plaintiffs to submit a Notice Plan to which Defendants may file objections.

Dated: March 16, 2020

Respectfully submitted,

By: */s/ Jake Phillips*
Jacob L. Phillips
FBN: 0120130
Edmund A. Normand
FBN: 865590

Normand PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
407.603.6031
service@ednormand.com
ed@ednormand.com
jacob.phillips@normandpllc.com

By:      */s/ Joshua R. Levine*
Jeff Ostrow
FBN: 121452
Jonathan M. Streisfeld
FBN.: 117447
Joshua R. Levine
FBN.: 91807
Kopelowitz Ostrow
Ferguson Weiselberg Gilbert
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
954-525-4100
ostrow@kolawyers.com
levine@kolawyers.com
streisfeld@kolawyers.com

Christopher J. Lynch
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com

Andrew Shamis
FBN: 101754
Shamis & Gentile, P.A.
14 N.E 1st Ave Ste. 1205
Miami, FL 33132
305-479-2299
ashamis@shamisgentile.com

Scott Edelsberg
FBN 100537
Scott Edelsberg, Esq.
David M. Sholl, Esq.
FBN: 0114791
Edelsberg Law, P.A.

21

20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com
david@edelsberglaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system this 16th day of March 2020, which caused a copy to be served on all counsel of record.

*/s/ Jake Phillips*
Jacob Phillips

22